Curia, per Harper, Chancellor.
We concur very fully with the presiding Chancellor, that the conveyances of the lands by Neely and Kennedy, connected with the written agreement between the complainant and the defendant, constitute a mortgage or secmity. And it is the well known rule of the Court, that that which was originally intended as a security, shall never be turned into an absolute conveyance. Even if it be expressly stipulated, that if the money be not paid at a given day, the title shall be absolute, and the estate irredeemable, this stipulation operates nothing. And it is equally incompetent to stipulate from what source the funds to redeem shall be derived. The mortgagee is considered in this Court, only, as a creditor, and all that he is entitled to is his money, coming at what time, (within the known limits,) or from what source, it may. But we are of opinion, that the complainant is not at liberty to redeem without paying off every thing that may be due from himself to the defendant. In Baxter vs. Manning, 1 Vern: 244, it was held, that where a mortgagee advanced more money to the mortgagor, the latter coming to redeem, must, pay both debts. In Morrell vs. Parke, 2 Atk: 53, however, a distinction is made between the mortgagor himself and his heir. The latter coming to redeem, must pay every thing that is due; but the former only pays the mortgage debt. And in Jones vs. Smith, 2 Ves. J. 376, the master of the Rolls states the old rule to have been, that the mortgagor coming to redeem, must pay every thing; but he admits the modem rule to be different, and I think, expresses some dissatisfaction at it. In St. John vs. Holford, 1 Eq. Ca. Abr. 324, A. mortgaged his estate for £400. After his death, his heir borrowed £2000 more, without any agreement that it should be secured by the mortgage, and his heir coming to redeem, was held bound to pay both sums — “for he that would have equity help him where the law cannot, must do equity to the party against whom he seeks to be relieved.” The cases of Shuttleworth vs. Laycock, 1 Vern. 245, of Challis vs. Casborn, 1 Eq. Ca. Abr. 325, and Troughton vs. Troughton, 1 Ves. 86, are cases to shew the liability of the heir, and the grounds of it, There is no dout, but that if a man make *14 two mortgages and comes to redeem, he shall not redeem one, without redeeming both. And what is the ground of this distinction between the mortgagor and his heir 1 It is plainly this. In the hands of the mortgagor himself, although a moiety might be extended under the Statute, the land itself was not considered liable to the payment of debts. He was entitled to have his land, though his debts should remain unpaid. But when the heir took lands by descent, the bond debts of the ancestor became his own personal debts, and the lands were assets to pay them. This is fully illustrated by the cases. And the principle is shewn by the cases relative to the pawning of personal chattels. In Demainbray vs. Metcalfe, 2 Vern. 691, A. pawned jewells to B, for £110. B. pawned them to C, for £200, and afterwards borrowed further sums of C, and became insolvent. Upon a bill by A, to redeem against C, he was held liable for all the sums advanced to B. This is recognized in Jones vs. Smith, before referred to. In the anonymous case, 1 Vern. 177, where a term was mortgaged, and the mortgagor contracted a further debt, his executor coming to redeem, was held to redeem both. This on the principle of equity before quoted. It is stated in many of the cases, that it is to prevent circuity of action, and with respect to the heir, that it would be vain to give him the land, when it would be immediately liable to the debt in his hands. There was a jurisdiction of this Court in allowing discount, before and independently of the Statute of set-off. Several cases of this sort may be found, 1 Eq. Ca. Abr. 8. It is there said, that discount is natural equity. Now certainly, the reasons ivliich in England exempt the mortgagor himself from the general rule, do not exist in this country. It cannot be said that the land is not liable to his debts in his hands. You cannot say that he is entitled to keep his land without paying his debts. If complainant should recover the land, it would be forthwith assets in his hands for the payment of his debt to defendant. There is the same equity to prevent circuity of action, as in the case of the heir or paw-nee of chattels in England. The rule I have spoken of, does not apply when the assignee or creditors of the mortgagor come to redeem. The chancellor seems to rest *15 his decision upon the fact, that the money was tendered at the day. But with deference, this seems to me to be founded in misconception. In England, a mortgage at law is regarded as an estate upon condition. (See 1 Pow. Mort. 140 et seq.) If the condition be broken by the non-payment of the money at the day, the estate of the mortgagee becomes absolute, and that of the mortgagor is forever gone. If the condition be performed, or if performance be tendered at the day, the estate of the mortgagee is defeated, and the mortgagor may recover at law, without any aid of Equity. If, however, from any cause, such as the lapse of the day, the party was under the necessity of coming into equity, then the equitable principle applied, that “he that would have equity help him where the law cannot, must do equity.” But it is plain that this cannot be regarded as a mortgage at law, and that the complainant can have no remedy at law. The legal title never was in him, and if we were to say the estate of the defendant were defeated by the tender, the effect would be, to vest it in Neely and Kennedy, who conveyed to him. It is only in equity that this can be set up as a mortgage or security. In addition, therefore, to the amount intended to be secured, an account must be taken of all sums due from the complainant to the defendant, which must also be paid. And it is ordered accordingly.
Clarke & M’Dowell for the motion.
Gregg & Woodward, contra.